# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNIE L. KINDLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07 C 4643 |
| ) | |
| WAUKEGAN COMMUNITY UNIT ) | |
| SCHOOL DISTRICT 60, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Annie Kindle brings this action against Waukegan Community Unit School District 60 (the District) under 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 2000e-3(a).[1] Kindle, who is employed by the District as a food service employee, alleges several acts of racial harassment and race discrimination, as well as retaliation for filing an earlier race discrimination charge with the Equal Employment Opportunity Commission (EEOC). The District moves for summary judgment, and for the reasons stated below, the Court grants the motion.

## Facts

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway*

---

[1] The Court thanks Kindle's appointed counsel, John J. Duffy and Michael P. Kelley, for their diligent work on Kindle's behalf.

1

*SuperAmerica, LLC*, 556 F.3d 1099, 1104 (7th Cir. 2009). The Court takes the following facts from the plaintiff's complaint and from the parties' statements of facts as to which there is no material dispute.

Kindle, who is African-American, has worked in the District in various food service positions since 1986. In 1996, she was promoted to supervisor of the kitchen and cafeteria at Jefferson Middle School (Jefferson). In her role as supervisor, Kindle is responsible for, among other things, ordering food and managing the servers, cashiers, and cooks who work in the Jefferson kitchen and cafeteria.

Much of the District's food services operation is managed and staffed by an outside contractor. These contract services are currently provided by Chartwells and were previously provided by Aramark and Sodexho. As a result of this arrangement, some food service workers in the District are employed by the District, and others are employed by the outside contractor. Similarly, there are both District personnel and outside contractor personnel who manage employees in the food service department. Kindle is, and has been at all relevant times, employed by the District. Her direct supervisor at the District at all times relevant to this lawsuit was Evelyn Driggers, Assistant to the Food Services Director. The Food Services Director position was held by an employee of the outside contractor. Driggers also reported to Bob Luosa, the Director of Business Services for the District.

In 2002, Kindle filed an EEOC charge alleging that she was denied an opportunity to take a temporary assignment at another's school's kitchen due to her race. She received a notice of right to sue from the EEOC and filed a lawsuit in this

District. Judge Elaine Bucklo entered an order granting summary judgment in favor of the District in that case on March 15, 2004.

On October 29, 2004 Kindle filed a second EEOC charge alleging, among other things, that she was the subject of retaliation and additional discrimination since the filing of her initial EEOC charge. That second EEOC complaint is the basis for this lawsuit.[2]

In her first amended complaint in this suit, Kindle alleges that the District harassed her based on race in violation of 42 U.S.C. § 1981 and retaliated against her for filing her first EEOC charge and subsequent lawsuit.[3] Specifically, Kindle alleges that the District harassed and retaliated against her by denying her the opportunity to work in the Jefferson cafeteria during summer school in 2004; failing to pay her for Good Fridays from 1997 until 2005 or 2006; denying her the opportunity to work overtime at catering events at which outside groups used school facilities; refusing to fill food orders she placed and writing her up for the resulting food shortages; asking her to terminate employees who were found to have criminal records; subjecting her to more frequent and more critical inspections than other food distribution supervisors; and accusing her of falsifying her time cards. Kindle's complaint and memoranda also

---

[2]During the pendency of this lawsuit, Kindle filed a third EEOC charge alleging additional acts of discrimination. The EEOC has not yet made any determination on that charge.

[3]In her amended complaint, Kindle appears to rely only on Section 1981, the only statute she cites in the title of each claim. The complaint also contains references, however, to Title VII, and both parties have argued the case as though Kindle relies on Title VII as well as Section 1981, so the Court assumes both statutes are involved.

allege several additional actions by the District, but she has conceded that these are beyond the scope of this lawsuit. Pl.'s Resp. to Def. Mot. for Summ. Judg. 15.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### A. Discrimination and retaliation (Count 2)

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, a plaintiff may prove discrimination by presenting evidence of actual discrimination (the "direct method" of proof) or through the *McDonnell Douglas* burden-shifting approach (the "indirect method" of proof). *See Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). In addition, under Title VII, an employer may not retaliate against an employee "because he has opposed any practice made an unlawful employment practice under this subchapter or

4

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Retaliation, like discrimination, can proved either directly or indirectly. The parties in this case agree that Kindle's claims should be evaluated under the indirect method. Courts evaluate section 1981 claims under the same rubric as Title VII claims, so the Court need not address them separately. *Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1028 (7th Cir. 2004).

Under the indirect method of proof, a plaintiff can establish a *prima facie* case of race discrimination if she produces evidence that (1) she was a member of a protected class; (2) she was meeting her employer's performance expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated persons not in the protected class more favorably. *McDonnell Douglas*, 411 U.S. 792, 802-804 (1973); *see also Hobbs v. City of Chicago*, 573 F.3d 454, 460 (7th Cir. 2009). A plaintiff can establish a *prima facie* case of retaliation by showing that (1) she lodged a complaint under Title VII; (2) she suffered a materially adverse action; (3) she was meeting her employer's legitimate expectations; and (4) she was treated less favorably than similarly-situated employees who did not complain. *Roby v. CWI, Inc.*, 579 F.3d 779, 786-87 (7th Cir. 2009).

If the plaintiff passes the hurdle of establishing a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action, "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v.*

*Hicks,* 509 U.S. 502, 507 (1993) (internal citation omitted). If the defendant supplies a legitimate, nondiscriminatory reason for its action, the plaintiff resumes her original burden of proof and must establish by a preponderance of the evidence that the defendant's proffered reasons are pretextual. *Id*.; *see also Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006). "A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Rabinovitz v. Pena,* 89 F.3d 482, 487 (7th Cir. 1996).

        1.    *Denied opportunity to work at Summer School*

The most substantial allegation in Kindle's complaint is that she was denied the opportunity to work food service in Jefferson's summer school program in 2004. Summer school is not offered every year at every District facility, and not all summer school programs require food service. The parties agree that it was generally the practice of the District to advertise summer school food service positions in the spring by posting those opportunities at the school where they would be located. Typically, the "first crack" at summer school employment at a given site would be given to those employees who worked at that site during the school year. Jefferson had a summer school food service program in 2004, and though Kindle would have wanted the position, it was given to someone else. The District concedes, and thus the Court assumes without finding, that Kindle can establish a *prima facie* case of discrimination or retaliation with regard to the summer work matter.

The District maintains that it did not hire Kindle for summer work in 2004 not because of discrimination or retaliation, but because of the circumstances under which the 2004 summer school food program at Jefferson came about. The District maintains that the summer school program at Jefferson was not managed by the District, and due to a miscommunication the District was unaware of the need for food services at Jefferson until after the summer school session began. Defendants state, and plaintiffs do not dispute, that Evelyn Driggers made at least one phone call to Kindle to alert her to this opportunity, but when she did not reach Kindle, she gave the position to another employee. Pl.'s LR 56.1 Stat. ¶ 36, Def.'s LR 56.1 Stat. ¶ 76. Kindle says that she did not receive a message and maintains that this method of attempting to reach her was "insufficient notice." Pl.'s LR 56.1 Stat. ¶ 37.

The District has provided a legitimate, non-discriminatory reason for its failure to hire Kindle for the summer school program at Jefferson in 2004. The burden thus shifts to Kindle to demonstrate that the District's cited reason is pretextual. *Sublett,* 463 F.3d at 737. Kindle offers no evidence of pretext, arguing only with the District's method of attempting to reach her. In her response to the District's motion for summary judgment, Kindle argues that the Court should not consider the District's non-discriminatory reason for its actions because at the summary judgment stage, the Court must view all facts in light most favorable to plaintiff. Though that is true, that standard does not obligate the Court to find an issue of fact where none is shown. Because Kindle has offered no evidence that would allow a reasonable jury to determine that the District's stated reason for this action was pretextual, there is no genuine issue of material fact regarding the summer work allegations.

2. *Removal from Cornerstone Church events*

For several years, Cornerstone Church used the Waukegan High School facility for services and occasional dinners. According to District policy, if kitchen facilities are used by an outside group, that group must be supervised by a school district food service employee. For several years, Kindle worked in this supervisory capacity during Cornerstone Church events.

The District has a collective bargaining agreement (CBA) with the union that represents food service workers. According to the District, in approximately 2004 or 2005, it learned that the CBA required the District to offer work opportunities at catering functions (including the Cornerstone Church events) to union members first and that it could offer such work to non-members only if not enough union workers signed up. After learning this, the District implemented a sign-up process for the Cornerstone Church events that gave preference to union members. Kindle is a supervisor and thus is not a union member. As a result, Kindle was removed from her duties at Cornerstone Church events.

Kindle argues that giving preference to unionized employees for such additional opportunities discriminates against non-unionized employees. This argument does not advance Kindle's race discrimination case, and in any event, non-membership in a union is not a protected class under Title VII or section 1981. There is nothing in Kindle's pleadings, memoranda, or supporting materials that suggests that she was removed from her duties at Cornerstone Church events because of her race or in retaliation for her prior EEOC complaint and subsequent lawsuit.

Even if Kindle could make out a *prima facie* case of race discrimination, the District has provided a legitimate, non-discriminatory reason for instituting the sign-up procedure that resulted in Kindle no longer working at outside events. The threat of a union grievance arising from the District's noncompliance with its CBA is a legitimate reason for the District to correct its practice that had allowed Kindle to work these events. Because the District has offered a legitimate, non-discriminatory reason for its actions, the burden shifts back to the Kindle to demonstrate that the explanation is pretextual. The only argument Kindle offers is that if the District had allowed her to work twelve years at these events without a union grievance, there was no need to expect one now. This argument fails; the District has provided undisputed evidence that its long-term non-compliance with the CBA was brought to its attention shortly before it implemented the sign-up process. Kindle's own statement disputing the District's assertion that it received a call from a union worker threatening to file a grievance is insufficient to raise a genuine issue of material fact. Her testimony involves a matter outside of her personal knowledge and is therefore inadmissible under Fed. R. Evid. 602.

   3. *Good Friday pay*

Kindle alleges that in 2005 or 2006, she realized that she had not been paid for Good Fridays after she was promoted to kitchen supervisor in 1996, though other kitchen supervisors did receive Good Friday pay. She brought this issue to the attention of the District superintendent and has received pay for Good Friday ever since. Plaintiff concedes that because her allegation of missed Good Friday pay dates back to 1997, well before her first EEOC filing, the District's prior failure to pay her for

Good Fridays could not constitute retaliation. She insists, however, that she can still sustain a discrimination claim.

Kindle's claim that she was denied Good Friday pay constitutes, at most, one day of missed pay per year for nine years. It is unlikely that a reasonable jury could determine that such a *de minimis* economic loss constitutes an actionable adverse employment action. *See Hunt v. City of Markham*, 219 F.3d 649, 654 (7th Cir. 2000) (denial of a bonus is *de minimis* economic loss and not actionable); *Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 534 (7th Cir. 1997) (a short delay in receiving a review/raise is "such a *de minimis* economic loss that it cannot reasonably or properly be interpreted as 'materially adverse employment action.'") This is particularly so in light of the uncontested statements by the District employees that if Kindle did not receive Good Friday pay, she would be entitled to receive it retroactively. Def.'s Mot. for Summ. Judg. Ex. 9 at 102. Even if a jury reasonably could determine that nine days of missed pay over nine years constituted an adverse employment action, Kindle fails to allege any connection to her race, and the District has offered, if indirectly, a legitimate, non-discriminatory reason for the action: the sincere belief that it did not occur, and a willingness to correct it if it did. Kindle offers no evidence that these statements were pretextual or should not be credited. In short, Kindle has failed to identify a genuine issue of material fact as to the Good Friday pay issue.

    *4.    Other allegations*

Kindle's remaining allegations all fail to present a genuine issue of material fact because they do not constitute actionable adverse employment actions. To be

actionable, "adverse actions must be materially adverse . . . meaning more than a 'mere inconvenience or alteration of job responsibilities.'" *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). A materially adverse action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at 612-13 (citation omitted). An employee's unhappiness with her employer's conduct or decision is insufficient to support a claim under Title VII. *See Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

Kindle alleges that due to discrimination or retaliation, the District failed to fill some of her food orders for Jefferson. As a result, the cafeteria sometimes had insufficient food to feed students, and Kindle at least once received a "write up" for these food shortages, which was placed in her employment file. She received no demotion or loss of pay in conjunction with this write up. The District contends that Kindle failed to file her food orders in a timely fashion, which caused the incomplete or missing deliveries and justified the write up. There is no need to address the dispute about whether Kindle filed her orders on time or not. Reprimands and letters placed in an employee's personnel file with no accompanying disciplinary action, demotion, or loss of pay do not constitute "materially adverse action" under Title VII or section 1981. *See Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (declining to broaden definition of adverse employment action to include unfair reprimands); *de la Rama v. Ill.*

*Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008) (documentation of unauthorized absences in employee's file not adverse action); *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 511 (7th Cir. 1999) (letter of concern placed in employee's file not adverse action).

Kindle further alleges that she suffered adverse employment action when she was asked to terminate several employees who worked at Jefferson. All food service employees who work in schools, including those who are employed by the outside contractor, are required to pass a criminal background check, and people with certain types of criminal history are prohibited from working at schools. Because of staff shortages, however, the District has for some time allowed people to be "provisionally hired" for food service and other positions pending the outcome of their criminal background checks. During the course of her employment, Kindle contends, Evelyn Diggers, the District employee in charge of food service hiring, asked Kindle to terminate the employment of three provisionally hired employees who had failed their criminal background check. Kindle refused, and Diggers fired the employees herself. Kindle asserts that because she refused to fire these individuals, Diggers was mad at her. Though Kindle may have been displeased at her boss's reaction, neither her reaction nor Driggers' claimed anger amounts to an adverse employment action, and no reasonable jury could find otherwise. *See Traylor,* 295 F.3d at 788.

Kindle also asserts that she was subject to additional and harsher inspections than other food service supervisors. Her problems stemmed from interactions with one particular Sodexho food safety auditor, who had a reputation for being difficult and was abrasive with kitchen supervisors through the District. Even assuming that Kindle was

subjected to frequent, harsh performance reviews by this auditor, she was never disciplined, demoted, or docked pay as a result of these inspections. As previously established, mere inconveniences and difficult behavior by supervisors do not constitute an actionable adverse employment action. *Traylor,* 295 F.3d at 788. In addition, the record indicates that Kindle was far from the only one to have problems with this particular auditor. There is no evidence from which a jury could determine that Kindle was treated differently than similarly-situated colleagues as required to establish a *prima facie* case of discrimination or retaliation.

Finally, Kindle claims that she was repeatedly lectured and criticized over her practice of handwriting times on her time cards (instead of punching in) for time spent in the morning going to the high school to pick up paperwork on her way to Jefferson. This practice of handwriting times was a frequently-permitted exception to the general District rule that employees must actually punch in on their time cards. Lecture and criticism about potential abuse of an exception to a District-wide rule does not rise to the level of adverse employment action, and no reasonable jury could find otherwise.

**B.    Racial harassment claim (Count 1)**

To succeed on a racial harassment claim, Kindle must show that "(1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004). The third of these elements

requires Kindle to establish that the objectionable environment was both subjectively and objectively offensive. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). "Another method of framing this issue . . . is to ask whether the harassing words or conduct were 'severe or pervasive.'" *Hrobowski*, 358 F.3d at 476.

Kindle's allegations, taken together, are insufficient to present a genuine issue of material fact on her claim of racial harassment. First, apart from a brief mention in her complaint of humiliation and emotional distress, Kindle has presented no evidence of a serious effect on her psychological well-being. More importantly, Kindle has presented no evidence from which a reasonable jury could find that any of the alleged harassment (including harsh inspections from the food auditor, Driggers' displeasure with her refusal to fire employees, failure to pay good Friday pay, and lectures and criticisms over the handwritten time cards) were based on her race. She therefore cannot sustain a racial harassment claim.

## Conclusion

For the reasons state above, the Court grants defendant's motion for summary judgment [docket no. 50]. The court directs the Clerk to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 19, 2009